# United States Court of Appeals for the Fifth Circuit

—————————

No. 23-60381

—————————

United States Court of Appeals
Fifth Circuit

**FILED**

February 26, 2025

Lyle W. Cayce
Clerk

SPRING SIDERS,

*Plaintiff—Appellant*,

*versus*

CITY OF BRANDON, MISSISSIPPI,

*Defendant—Appellee*.

—————————————————————

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:22-CV-614

—————————————————————

ON PETITION FOR REHEARING EN BANC

Before SMITH, WIENER, and DOUGLAS, *Circuit Judges*.

PER CURIAM:

Treating the petition for rehearing en banc as a petition for panel rehearing (5TH CIR. R.40 I.O.P.), the petition for panel rehearing is DENIED. The petition for rehearing en banc is DENIED because, at the

request of one of its members, the court was polled, and a majority did not vote in favor of rehearing (Fed. R. App. P. 40 and 5th Cir. R. 40).

In the en banc poll, two judges voted in favor of rehearing, Chief Judge Elrod and Judge Ho, and fifteen judges voted against rehearing, Judges Jones, Smith, Stewart, Richman, Southwick, Haynes, Graves, Higginson, Willett, Duncan, Engelhardt, Oldham, Wilson, Douglas, and Ramirez.

ANDREW S. OLDHAM, *Circuit Judge*, joined by JONES, SMITH, WILLETT, DUNCAN, ENGELHARDT, and WILSON, *Circuit Judges*, concurring in the denial of rehearing en banc:

Spring Siders challenges the City of Brandon's ordinance only as an unreasonable time, place, and manner restriction under the Free Speech Clause. That challenge might well succeed in whole or in part because there are aspects of the ordinance that raise constitutional concerns. For example, the ordinance prohibits the use of "step stools" in a designated "Protest Area." City of Brandon Ordinance, § 50-45(2)(e). It is unclear how such restrictions are narrowly tailored to the City's interest in ensuring public safety or the free flow of traffic. At this preliminary stage of the litigation, however, Siders does not challenge any of the restrictions in the "Protest Area." Nor does she claim the City violated her Free Exercise rights to evangelize. Nor does she claim the City selectively enforced a facially neutral time, place, and manner restriction to discriminate against evangelical Christians.

You would know none of this from reading the dissenting opinion. It alleges that 15 members of the en banc court have blessed the "sacrifice [of] our constitutional freedoms at the altar of bureaucratic efficiency" by "banish[ing] people of faith like Siders to the functional equivalent of Siberia." *Post*, at 2 (Ho, J., dissenting). And it claims today's vote is tantamount to "banishment of religious activity from the public square." *Ibid.* If this case implicated the First Amendment's Religion Clauses, the result might have been different. But rhetorical flourish is no substitute for the facts and law in the case before us.

\*

The Brandon Amphitheater is run by the City of Brandon, Mississippi. The Amphitheater's main use is for live concerts. During such concerts, over 8,500 guests use the abutting sidewalks and parking lots to enter the Amphitheater.

The City's ordinance restricts the areas and methods allowed for "public protests and/or demonstrations" near the Amphitheater during the three hours before and the one hour after concerts at the venue. City of

Brandon Ordinance, § 50-45(1). The ordinance restricts any such demonstrations to a designated "Protest Area." *Id.* § 50-45(2). Within the Protest Area, demonstrators may not use lasers, megaphones, or "wooden, or metal signs or sign stakes made from hard material that may be used as a weapon." *Id.* § 50-45(2)(b), (c), (f). Nor can they install permanent fixtures. *Id.* § 50-45(2)(f). The City's rationale for the ordinance is to "ensur[e] public safety and order [and] promot[e] the free flow of traffic on streets and sidewalks" before and after busy concerts at the Amphitheater. *Siders v. City of Brandon*, 123 F.4th 293, 305 (5th Cir. 2024) (quotation omitted).

On May 1, 2021, Siders was threatened with arrest (but not arrested) outside the Brandon Amphitheater before a Lee Brice concert. The nature of her non-arrest is unclear on this preliminary record. And it is not wholly clear what precisely she did (or wanted to do) that could violate the ordinance. But in her preliminary-injunction filing, Siders said that she feared police officers would "arrest" her "under § 50-45" if she tried "to hold a sign, hand out literature, wear an expressive t-shirt, talk with people, or pray with people." Affidavit of Spring Siders ¶ 57 (ROA.32).

\*

Now, if police prohibited Siders from engaging concertgoers in prayer and conversation, wearing a t-shirt expressing her faith, or handing out tracts expounding Biblical teaching, that would be patently unconstitutional. But the ordinance does not purport to regulate prayer, conversation, t-shirts, evangelism, or tracts. It thus appears that Siders can evangelize inside the Protest Area, outside the Protest Area, or anywhere else she pleases. And it is befuddling to say that her speech is somehow "*limited* to the Protest Area." *Post*, at 2 (Ho, J., dissenting).[1]

---

[1] The dissenting opinion cobbles together a series of selectively excerpted quotations—spanning ten pages of the panel opinion, wrenched from context, and then shoehorned into two parentheticals—to make it sound like the panel held Siders can be arrested for simply evangelizing in a conversational tone. *See post*, at 1–2 (Ho, J., dissenting). That is wrong coming and going. The panel opinion noted that Siders is free to do whatever she wants *outside* the "Restricted Area," which is not the same as saying Siders cannot evangelize *inside* the "Restricted Area." *Cf. National Pork Prods. v. Ross*, 598 U.S. 356, 373 (2023) ("The language of an opinion is not always to be parsed as though we were

No. 23-60381

And as far as the record before us reveals, Siders does not allege the City or its officers are selectively enforcing the ordinance against evangelical Christians or even against the "dissemination of . . . religious views and doctrines." *Id.* at 1 (quoting *Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 647 (1981)); *cf. Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 158 (1969) ("The petitioner was clearly given to understand that under no circumstances would he and his group be permitted to demonstrate in Birmingham, not that a demonstration would be approved if a time and place were selected that would minimize traffic problems.").

Likewise, Siders does not bring a claim under the Free Exercise Clause, which "bars even 'subtle departures from neutrality' on matters of religion." *Masterpiece Cakeshop v. Colo. C.R. Comm'n*, 584 U.S. 617, 638 (2018) (quoting *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 534 (1993)). She does not allege that the ordinance's terms single out religious practices for different treatment. *See Church of Lukumi Babalu Aye*, 508 U.S. at 533 (applying fatal strict scrutiny to ordinance that prohibited the "ritual sacrifice" of animals but not nonreligious slaughter). Nor does she allege that the City has violated its "duty under the First Amendment not to base laws or regulations on hostility to a religion or religious viewpoint." *Masterpiece Cakeshop*, 584 U.S. at 638.

\*

Siders brings her challenge *only* under the Free Speech Clause. The Supreme Court has interpreted that Clause to allow reasonable restrictions on the time, place, and manner of protected speech. *McCullen v. Coakley*, 573 U.S. 464, 477 (2014). These restrictions are reasonable when they are content neutral, narrowly tailored to further a substantial government interest, and leave open ample alternative channels for expression. *Ibid.*; *see also Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (upholding noise ordinance in Central Park against challenge by "antiracist" rock music

---

dealing with language of a statute." (cleaned up)). And assuming that Siders only "spoke in a conversational tone," *post*, at 2 (Ho, J., dissenting), that could explain why she was not arrested. But it also highlights how difficult it would be to fashion injunctive relief to protect Siders' as-applied Free Speech rights: We do not know what Siders wanted to do but could not do because of the ordinance.

Case: 23-60814-DF Document 80-2 Page: 6 Date: 02/26/25 Page 2 of 10
Case 2:23-cv-00814-DPJ Document 80-2 Page: 6 Date: 02/26/25 Page 2 of 10

No. 23-60381

group); *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 299 (1984) (upholding National Park Service regulation that prohibited camping against demonstrators' sleeping in tents on the National Mall and in Lafayette Park). Combatting "congestion" or "interference with ingress or egress" is a content-neutral concern. *McCullen*, 573 U.S. at 480 (quoting *Boos v. Barry*, 485 U.S. 312, 321 (1988)). And "ensuring public safety and order" by "promoting the free flow of traffic on streets and sidewalks" can be a legitimate government interest. *Id.* at 486 (quotation omitted).

Did the City comply with these rules? There is evidence that the City wanted to ensure public safety by keeping thousands of people on the sidewalks and not in the roadways.



ROA.267, 269.

Maybe Siders will produce other evidence to show that the City's concerns with sidewalks are pretextual. Or maybe she'll amend her complaint to bring other claims that focus on her religious freedoms. In the meantime, she remains free to do what she says she wants to do—to "have a conversation," to pray, and to evangelize—*anywhere* and without restriction.

No. 23-60381

Affidavit of Spring Siders ¶ 38 (ROA.30). Waiting to see a more developed factual record and set of legal claims does not "betray[] either a profound lack of imagination or a robotic dismissal of First Amendment rights." *Post*, at 2 (Ho, J., dissenting). Nor does it mean that "her right to evangelize will just have to wait." *Id.* at 3.

James C. Ho, *Circuit Judge*, dissenting from denial of rehearing en banc:

Spring Siders is an evangelical Christian who feels called to share the gospel with her fellow citizens and neighbors. But city officials threatened to arrest her when she tried to do so outside a city amphitheater immediately before and after a live concert.

"The dissemination of . . . religious views and doctrines is protected by the First Amendment." *Heffron v. Int'l Soc. For Krishna Consciousness, Inc.*, 452 U.S. 640, 647 (1981). *See also Herridge v. Montgomery County, Tex.*, 2022 WL 989421, *2 (5th Cir. April 1, 2022) (Ho, J., concurring) (same). "The right to speak freely and to promote diversity of ideas and programs is . . . one of the chief distinctions that sets us apart from totalitarian regimes." *Ashton v. Kentucky*, 384 U.S. 195, 199 (1966).

Of course, governments may enact content-neutral time, place, and manner restrictions on speech to ensure public safety, maintain order, and enable the free flow of traffic. But such regulations must be "narrowly tailored" and "must not burden substantially more speech than is necessary to further the government's legitimate interests." *McCullen v. Coakley*, 573 U.S. 464, 486 (2014) (citation omitted). "[B]y demanding a close fit between ends and means, the tailoring requirement prevents the government from too readily sacrificing speech for efficiency." *Id.* (citation omitted).

Yet that's precisely what public officials appear to have done here.

City officials contend that a city ordinance concerning public protests and demonstrations at the city's public amphitheater allows them to confine entirely peaceful religious activities before, during, and after live concerts to a small, designated area far from the amphitheater—putting 70% of the intended audience entirely out of reach. *See Siders v. City of Brandon*, 123 F.4th 293, 298, 308–09 (5th Cir. 2024) (under city ordinance, Siders may not "preach, speak, or evangelize anywhere" inside the "Restricted Area," but may do so only within a "designated area" "far away" from concert attendees); *id.* at 300, 305 ("it is clear that [the city] intended to enforce the law" against "each one" of the "members of the group," including Siders, even though she did not engage in any "loud," "offensive," "distracting,"

No. 23-60381

or otherwise disruptive practices, and in fact only "spoke in a conversational tone").

What is the city's justification for this banishment of religious activity from the public square? City officials contend that they want to prevent concertgoers from having to step into the street, as well as ensure that police officers do not have to divert their attention while managing the crowd.

There's nothing wrong with the city's asserted interest. But their purported solution—to effectively banish people of faith like Siders to the functional equivalent of Siberia, as a condition of exercising their faith— betrays either a profound lack of imagination or a robotic dismissal of First Amendment rights. In sum, we're simply told that, to keep people on the sidewalks and not in the roadways, they must move people like Siders to a "far away" location. It should not be this easy for local officials to sacrifice our constitutional freedoms at the altar of bureaucratic efficiency. Proper respect for religious liberty deserves much more than what the city did here.

I respectfully dissent from the denial of rehearing en banc.

* * *

A brief response to my concurring colleagues: They open by noting that Siders "does not challenge any of the restrictions in the 'Protest Area.'" It's not clear to me why that's significant—Siders is, of course, challenging the fact that her speech is *limited* to the Protest Area. Their second point is that she failed to bring a claim under the Free Exercise Clause. Again, it's not clear to me why that's significant—religious expression is, of course, protected under the Freedom of Speech Clause. Finally, as for the charge that I've somehow misread the panel opinion, readers can decide for themselves—but it seems obvious to me that the panel simply wasn't troubled that the ordinance would "diminish[] in size" the audience that Siders would be allowed to reach. 123 F.4th at 309.

Perhaps I should take some solace in their acknowledgment that it would be "patently unconstitutional" "if police prohibited Siders from engaging concertgoers in prayer and conversation." But since that's what happened here, I don't see why a preliminary injunction should not be readily

No. 23-60381

issued.  I get that my concurring colleagues are content to just let this matter
go to trial.  But that seems unnecessarily grudging to me.  "The loss of First
Amendment freedoms, for even minimal periods of time, unquestionably
constitutes irreparable injury," warranting preliminary injunctive relief in
advance of trial.  *Elrod v. Burns*, 427 U.S. 347, 373 (1976).  *See also Opulent
Life Church v. City of Holly Springs*, 697 F.3d 279, 295 (5th Cir. 2012) (same).

Maybe Siders will someday prevail at trial.  But until then, her right to
evangelize will just have to wait.